UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ASHLEY CAPITOLA VEGA,

    Plaintiff,

v.                                    Case No: 6:17-cv-1041-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance Benefits and Supplemental Security Income under the Act. Upon review, the Commissioner's final decision in this case is affirmed.

## Background[2]

On September 12, 2013, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability commencing on November 20, 2011, due to lupus, Lyme disease, Chiari malformation, numbness in her hands, migraines, dizziness, blurry vision, seizures, neck and shoulder pain, anxiety, depression, and an aneurysm (Tr. 43-44, 93, 254-261, 285, 318).[3] Plaintiff later amended her alleged onset date of disability to January 15, 2014 (Tr. 43, 285). Her claims were

---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.
[2] The information in this section comes from the parties' joint memorandum (Doc. 17).
[3] Plaintiff had filed prior applications which were denied and not appealed (Tr. 11). These prior applications are not at issue in this appeal (Doc. 17, n. 1).

denied initially and on reconsideration (Tr. 167-169, 171-173, 176-180, 182-186) and Plaintiff requested and received a hearing before an administrative law judge ("ALJ") 41-72, 187-188). On March 9, 2016, the ALJ found Plaintiff not disabled and issued his unfavorable decision (Tr. 8-40). On April 18, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Accordingly, the ALJ's decision became the Commissioner's final decision. This appeal timely followed (Doc. 1).

### The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and which appears in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended onset date (20 CFR 404.1571 et seq., and 416.971 et seq.) (Tr. 14). At step two, the ALJ determined that Plaintiff had the severe impairments of: a seizure disorder; a Chiari I malformation of the craniovertebral junction (with headaches); neuropathy; degenerative disc disease of the cervical spine; degenerative joint disease/bursitis of the

spine; a bipolar disorder; an anxiety disorder; an attention-deficit/ hyperactivity disorder; and a substance use disorder in remission (20 CFR 404.1520(c) and 416.920(c)) (Tr. 14). But, the ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 17). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with additional limitations. The claimant can lift, carry, push, or pull 20 pounds occasionally (up to one-third of the workday) and 10 pounds frequently (up to two thirds of the workday), as well as sit, stand, or walk for 6 hours each out of an 8-hour workday. The claimant can frequently use hand controls and frequently handle with both upper extremities. The claimant can never climb ladders, ropes, or scaffolds, but can frequently climb ramps and stairs. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant can never operate a motor vehicle as part of the work duties. The claimant can have occasional exposure to vibration. The claimant has to avoid all exposure to hazards such as unprotected heights or moving machinery. Additionally, the claimant is limited to performing simple, routine, and repetitive tasks; is limited to making simple work-related decisions; and, is limited to having occasional interaction with coworkers, supervisors, and the general public.

(Tr. 19).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (Tr. 31).[4] However, after applying the Medical-Vocational Guidelines as a framework for decision making and considering the Vocational Expert's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff could

---

[4] Plaintiff was thirty years old on the date of the ALJ's decision (Tr. 256). She had completed two years of college, earned an associate's degree, and had past work experience as a general duty nurse (Tr. 46, 66, 319-320, 385, 389).

- 3 -

perform a significant number of jobs in the national economy (Tr. 32-33), and was therefore not under a disability (Tr. 33).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff contends that the ALJ erred in weighing the medical opinions of an examining psychologist and a treating physician.

- 4 -

Evaluation of Medical Opinions

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinions, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight.'" Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec.,

No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c) (2); Crawford, 363 F.3d at 1161. Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

Dr. Gimon

On January 9, 2014, Plaintiff presented to Alexander T. Gimon, Ph.D., for a consultative psychological evaluation at the request of the Office of Disability Determinations (Tr. 809-811). On mental status exam, Dr. Gimon found Plaintiff oriented to person, place, and situation; she was cooperative; and able to understand and follow instructions (Tr. 810). Dr. Gimon noted that Plaintiff was anxious and presented symptoms of mania, but she attempted to remain in control of her emotions. (Id.). Her rate of speech was pressured. (Id.). She spoke incessantly and offered tremendous amounts of detail, some seemingly irrelevant. (Id.). And, she reported experiencing suicidal ideation as recently as three months prior to the appointment (Tr. 810-811). Plaintiff's mood was expansive with congruent affect; her thought processes were relevant with no evidence of psychotic content; she denied delusions and hallucinations; and there was no evidence of a thought disorder (Tr. 810). Dr. Gimon reported that Plaintiff "answered readily and accurately to all items in the mental status examination" and her results were unremarkable related to personal orientation, concentration, and memory (Tr. 811). The

doctor's impressions included bipolar disorder, most recent episode manic; polysubstance dependence (in remission); and rule out histrionic personality disorder. (Id.). His Axis IV impression was "[d]iminished work capacity and increasing difficulties relating in a socially in a [sic] meaningful way." (Id.). Dr. Gimon assigned Plaintiff a GAF[5] score of 45 and wrote:

> 1. Claimant opined her inability to drive, her distractibility, and mood lability interfere with her ability to seek or retain gainful employment. It seems appropriate for this person to seek assistance with community programs which provide case management supervision, perhaps transportation, and that have educated local community business on the nature, progression and management of certain mental conditions. This may permit this claimant to work and cement some basic independent living skills.
>
> 2. Ms. Vega impressed as highly intelligent, however, absent seizures and bipolar disorder symptoms suggest decision making is impaired, thus no presently capable of making rational choices. As such, it appears is in her best interest that an executor be named to manage any funds, in the event these are granted.

(Id.).

Plaintiff acknowledges that the ALJ considered this report and "made various notations regarding Dr. Gimon's examination of Ms. Vega." (Doc. 17 at 12; See Tr. 15, 16, 22, 23, 30, 31). However, Plaintiff contends that the ALJ failed to apply the correct legal standards because the ALJ "overlooked" Dr. Gimon's opinions that Plaintiff had a diminished work capacity and needed to reach out to community resources to see if this would permit her to work, and that Plaintiff was not capable of making rational choices. The Commissioner counters that this evidence does not constitute a medical opinion under the regulations and, even if it did, any error in failing to explicitly discuss it is

---

[5] Global Assessment of Functioning.

harmless.

The regulations explain that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature *and severity of your impairment*(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a) (2) (emphasis added). A finding that Plaintiff's "decision making is impaired" with a present inability to make rational choices is, indeed, a judgment regarding the severity of Plaintiff's mental impairment. While Dr. Gimon was a one-time consultant and his opinion is not entitled to the deference shown a treating provider, the Court nonetheless finds that the evidence is a medical opinion which should be considered by the ALJ.

While the particular excerpt of Dr. Gimon's report upon which Plaintiff focuses was not discussed explicitly, the ALJ did not ignore the report, as shown by the ALJ's numerous references to Dr. Gimon's examination and findings throughout the administrative decision.[6] Of particular note, the ALJ discussed and weighed Dr. Gimon's opinion regarding the severity of Plaintiff's symptoms, stating:

> On January 9, 2014, Dr. Gimon had noted that the claimant had a global assessment of functioning (GAF) score of only 45, within the 41 to 50 range, **indicating severe symptoms or a serious impairment in social or occupational functioning**

---

[6] For example, the ALJ observed: "On January 9, 2014, Dr. A. Gimon, in a consultative psychological examination, noted that the claimant was anxious, and presented with symptoms of mania, yet attempted to remain in control of her emotions; that she had pressured speech; and, that she spoke incessantly and offered tremendous amounts of details, some seemingly irrelevant (Exhibit 13F/3)." (Tr. 15); "Dr. Gimon noted that the claimant was cooperative, and with an expansive mood, a congruent affect, and no suicidal ideation (Exhibit 13F/3-4)" (Tr. 15); "Dr. Gimon noted that the claimant was oriented and able to (concentrate to) understand and follow instructions, and that she had relevant thought processes, unremarkable concentration, an unremarkable memory, no delusions/ hallucinations, and no psychosis (Exhibit 13F/3-4)" (Tr. 16); "Dr. Gimon noted that the claimant was oriented, cooperative, able to understand and follow instructions, in an expansive mood, and with a congruent affect, relevant thought processes, unremarkable concentration, an unremarkable memory, no delusions/hallucinations, no thought disorder, no psychosis, and, in the past 3 months, no suicidal ideation." (Tr. 22). See also Tr. 23, 31.

> (Exhibit 13F/4). This GAF score opinion, however, is accorded little weight because GAF scores are not standardized, nor designed to predict patient outcomes, and may lack supporting detail. They are no longer included in the Diagnostic and Statistical Manual of Mental Disorders (See DSM-V). (In the instant case, **this GAF score is not well supported and not consistent with the other evidence** (set forth in this Finding)).

(Tr. 23) (emphasis added). As Dr. Gimon's report was clearly considered and the ALJ weighed and rejected the opinion of severe symptoms implicit in Plaintiff's GAF score as being unsupported and inconsistent with other evidence, I find no basis for remand. The failure to specifically discuss the particular conclusions at issue, drawn by a non-treating provider, is not fatal error as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" provided the ALJ's decision is sufficient to enable the Court to conclude that the ALJ properly considered the claimant's condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation omitted). Such is the case here. The ALJ thoroughly discussed Plaintiff's allegations of mental limitations and evaluated and discounted Dr. Gimon's opinion of severe symptoms or serious impairment in social or occupational functioning (albeit in the context of a GAF score). As the ALJ's ultimate conclusion–which includes limitations to simple, routine work–is well supported by the substantial evidence he cites, any error is harmless under these circumstances.[7] See, generally, Shaw v. Astrue, 392 F. App'x 684, 687 (11th Cir. 2010), citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir.1983).

Dr. Couts

Carol Couts, M.D. was one of Plaintiff's treating providers at Lifestream Behavioral Center. On November 10, 2014, Dr. Couts opined that Plaintiff was markedly limited in

---

[7] Plaintiff has failed to show how Dr. Gimon's statements result in additional limitations.

her ability to sustain numerous mental activities "over a normal workday and workweek, on an ongoing basis" (Tr. 1016-1017). The ALJ acknowledged this report but found:

> This opinion, however, is not accorded controlling weight because opinions on the issues of whether the claimant is "disabled" or "unable to work" are reserved to the Commissioner because they are administrative findings that are dispositive of a case (20 CFR 404.l527(e) and 416.927(e), and SSR 96-5p). Moreover, this opinion is inconsistent with the evidence as a whole (as set forth further below) showing that the claimant can perform simple, routine, and repetitive tasks, make simple work-related decisions, and have occasional interaction with coworkers, supervisors, and the general public.

(Tr. 29). Plaintiff argues, correctly, that this was error because Dr. Couts did not opine that Plaintiff was "disabled" or "unable to work." Instead, Dr. Couts provided opinions on specific work-related mental activities (Tr. 1016-1017). If this were the only reason offered by the ALJ for discounting Dr. Couts' opinion, remand would be required. But, the ALJ offered a second reason—finding that Dr. Couts' opinion was inconsistent with certain identified record evidence which supports the mental limitations set forth in the RFC (Tr. 29-31). Plaintiff contends that this conclusion is not supported by substantial evidence because some of the normal findings cited by the ALJ are from medical records that deal primarily with Plaintiff's physical impairments (Tr. 30), and the significant mental health findings relied on support Dr. Couts' opinion (Tr. 31). Finally, Plaintiff argues that the ALJ did not apply the correct standard in that he failed to properly consider or weigh Dr. Gimon's opinions, which was consistent with that of Dr. Couts.

As explained above, the court finds no error in the ALJ's consideration of Dr. Gimon's opinions. Indeed, the ALJ relied on Dr. Gimon's mental status examination findings as some of the evidence found to be inconsistent with Dr. Couts' opinion that Plaintiff had marked limitations in her ability to perform most mental basic work activities.

("On January 9, 2014, Dr. Gimon noted that the claimant was oriented, cooperative, able to understand and follow instructions, in an expansive mood, and with a congruent affect, relevant thought processes, unremarkable concentration, an unremarkable memory, no delusions/hallucinations, no thought disorder, no psychosis, and, in the past 3 months, no suicidal ideation" - Tr. 30). The Court also disagrees that the records cited by the ALJ deal primarily with Plaintiff's physical impairments. In addition to records from other medical specialty providers, the ALJ cited records from psychiatrist Dr. Sofia Qadir; Dr. Couts; Dr. Gimon; and (to a limited extent) the opinions of non-examining state agency psychologists (Tr. 30-31).

Plaintiff's last contention, that some of these records are not necessarily inconsistent with the opinion of Dr. Couts is of no moment. The issue is not whether some of the evidence could support a different finding (it could); the issue is whether substantial evidence supports the ALJ's finding. The ALJ cited to the evidence from Plaintiff's treating and examining physicians as well as state agency consultants (Tr. 20-31), including relatively unremarkable findings on neurological and mental status examination by Drs. Desgranges, Gonzalez, Gimon, Mousli, Couts, and Mercier (Tr. 30-31, 780, 785, 811, 1059, 1080, 1114, 1124, 1133-34, 1141-42, 1154, 1212). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. (internal quotation and citation omitted).

As the administrative decision was made in accordance with proper legal standards and is supported by substantial evidence, it is due to be affirmed.

## Conclusion

Upon consideration of the foregoing the Commissioner's final decision in this case is **AFFIRMED.** **T**he Clerk is directed to enter judgment accordingly and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on February 14, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record